IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LAFARGE NORTH AMERICA INC.,
a Maryland Corporation,

    Plaintiff,

vs.

HOMELAND READY-MIX, INC.,
a Kansas corporation, ROBERT R.
O'BRIEN, and DENNIS O'BRIEN,

    Defendants.

Case No. 08-1369-JTM

MEMORANDUM AND ORDER

Plaintiff Lafarge North America, Inc., brought this action against defendants Homeland Ready-Mix, Inc., and two agents or officers, Robert and Dennis O'Brien, raising claims in the Amended Complaint for breach of guaranty (Count 1, against Robert O'Brien), breach of promissory note and confession of judgment (Count 2, against Homeland), and dishonored checks (Count 3, against Dennis O'Brien). The matter is before the court on the Motion to Dismiss pursuant to Fed.R.Civ.Pr. 12(b)(6) filed by Dennis O'Brien seeking dismissal of Count 3, arguing that he cannot be personally liable on the checks, under Kansas law, since the checks were signed as a representative of Homeland, his employer, were drawn on the Homeland's account, and prominently identified Homeland on their face.

K.S.A. § 84-3-402(c) provides:

> If a representative signs the name of the representative as drawer of a check without indication of the representative status and the check is payable from an account of the represented person who is identified on the check, the signer is not liable on the check if the signature is an authorized signature of the represented person.

The official Kansas comment provides:

> Subsection (c) is directed at the check cases. It states that if the check identifies the represented person the agent who signs on the signature line does not have to indicate agency status. Virtually all checks used today are in personalized form which identify the person on whose account the check is drawn. In this case, nobody is deceived into thinking that the person signing the check is meant to be liable. This subsection is meant to overrule cases decided under former Article 3 such as *Griffin v. Ellinger*, 538 S.W.2d 97 (Texas 1976).

The worthless check statute underlying Count 5, K.S.A. 60-2610, provides:

> (a) If a person gives a worthless check, the person shall be liable to the holder of the check for the amount of the check, the incurred court costs, the incurred service charge, interest at the statutory rate and the costs of collection including but not limited to reasonable attorney fees, plus an amount equal to the greater of the following:
>
> (1) Damages equal to three times the amount of the check but not exceeding the amount of the check by more than $500; or
>
> (2) $100.

O'Brien argues that the worthless check statute must be subject to the defense offered by Kansas U.C.C. § 3-402(c), or the later statute "would be completely abrogated." (Dkt. 42, at 5). Further, he argues, to the extent there is a conflict between the statutes, § 3-402(c) as the more specific and most recently enacted should control. (Id. at 5-6). In support of his argument, he also cites a variety of cases from other jurisdictions as holding that the local version of U.C.C. § 3-402(c) should be deemed to create immunity from an action under a worthless check statute. *See Diversified Industries, Inc., vs. Captains of the Guard, Inc.*, No. A07-1229, 2008 WL 1972925 (Min. App. May

6, 2008); *Kunz v. Cycles West, Inc.*, 969 P.2d 781, 784 (Co. App. 1998); *Fink v. Hollywood Marble, Inc.*, No. B190153, 2006 WL 3317921 (Cal. App. Nov. 16, 2006); *Promet v. Chadha*, No. B156104, 2003 WL 356685 (Cal. App. Feb. 19, 2003).

With respect to the cases cited by O'Brien, Laforge argues that the California decisions turned on unique language in the California statutes, that the Colorado Court of Appeals had prior to *Kunz* adopted a different view, *Mountain States Commercial Collec'ns v. 99¢ Liquidators*, 940 P.2d 934 (Col. App. 1996),[1] and that unlike the Kansas worthless check statute, the Minnesota statute requires proof of wrongful intent. In addition, Laforge cites *McCain v. Erdman*, 4 Kan.App.2d 375, 607 P.2d 78 (1980) for the proposition that the worthless check statute is the more specific statute.

In essence, both parties agree that the more specific statute should control over the more general, *see Kansas Racing Mgt. v. Kansas Racing Com'n*, 244 Kan. 343, 353 (1989), but each chooses a different general for this battle.

The court finds that *McCain* has little relevance here. That case involved a wholly separate statute, K.S.A. 44-323(b), which provides for corporate officer liability where the officer aids a corporation in violating the statutes requiring payment of earned wages to employees. "Because of this special statute (K.S.A. 44-323(b))," the court held, "the general rule pertaining to a corporate

---

[1]Laforge argues that, contrary to language in *Kunz*, the Colorado Court of Appeals in *Mountain States* did "specifically consider[] Section 3-402 and held that it was inapplicable in that case based on the language of the Worthless Check Statute." (Dkt. xxx at 7 n. 3). However, Laforge provides no direct citation to this supposed specific discussion, and it is in fact inaccurate. The only mention of the local version of § 3-402 occurs in Judge Briggs's dissent. 940 P.2d 938-939. In *Kunz*, the court explicitly distinguished *Mountain States* on the grounds that the Colorado version of § 3-402 "was not in effect at the time the checks at issue there were executed."

3

officer's liability for the debts of a corporation is not applicable.." 4 Kan.App.2d at 378. Thus, in *McCain* the court was not comparing the two statutes here in question, but a separate statute with a "general rule" of law that had been cited by the trial court in dismissing the action against the corporate officer. Further, while the defendant in *McCain* had issued worthless checks, this is entirely incidental to the text of K.S.A. 44-323, which is triggered whenever the corporate officer "knowingly permits" the corporation to avoid its duty to pay earned wages.

The court further finds that the decisions from other jurisdictions generally support a limitation of liability. In *Kunz*, the Colorado Court of Appeals found that "[t]o harmonize the statutes" the best course was to conclude "the phrases 'any person,' 'the person,' and 'the maker'" in the worthless check statute "refer to the corporation when the owner of the account is a corporation and the signature on the check is that of an authorized corporate officer." 969 P.2d at 784. Even granting the existence of some distinction in language among cited statutes, it remains the case that the cited courts did conclude that U.C.C. § 3-402(c) provides protection to corporate representatives against a worthless check claim. Further, it must be noted that Lafarge presents no contrary authority in the form of any cases holding that a worthless check statute should take precedence over U.C.C. § 3-402(c).

Lafarge also argues that § 3-402 is essentially irrelevant, as it is not trying to hold O'Brien liable as principal because he failed to indicate representative capacity, but "because [he] issued, delivered or caused a worthless check to be delivered to Lafarge within the meaning of [the worthless check] statute." (Dkt. 50, at 9). In fact, the court must reconcile the statutes; the court must interpret K.S.A. 84-3-402(c) in light of its literal text, which provides that as to the corporate representative, "the signer is *not liable* on the check if the signature is an authorized signature of the

represented person." (Emphasis added). The court concurs with the decisions from other jurisdictions in holding that the more appropriate result is to construe § 3-402 as a bar to immunity to an action under the relevant state worthless check statute.

IT IS ACCORDINGLY ORDERED this 22nd day of December, 2009 that the defendant's Motion to Dismiss (Dkt. 41) is hereby granted.

s/ J. Thomas Marten  
J. THOMAS MARTEN, JUDGE